**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>SURE WINNER FOODS,<br><br>Debtor. | Chapter 11<br>Case No. 19-20226 |

**MOTION FOR ORDER COMPELLING NESTLE DREYER'S ICE CREAM COMPANY TO APPEAR FOR RULE 2004 EXAMINATION AND TO PRODUCE DOCUMENTS IN CONNECTION THEREWITH**

Sure Winner Foods, the debtor and debtor-in-possession in the above-captioned bankruptcy case ("SWF" or the "Debtor"), by and through undersigned proposed counsel, hereby moves (the "Motion") the Court for an order authorizing the examination of Nestle Dreyer's Ice Cream Company ("NDIC") pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. The Debtor seeks an examination of NDIC (the "Examination") to explore potential claims of the Debtor's estate against NDIC or others in connection with or arising from the business relationship between SWF and NDIC, including in regard to the Distribution Agreement by and between NDIC and SWF effective September 7, 2014, as amended by that First Amendment effective September 7, 2014 (collectively, the "2014 Agreement"). In further support of this Motion, the Debtor states as follows:

**JURISDICTION AND VENUE**

1. The United States District Court for the District of Maine (the "District Court") has original, but not exclusive, jurisdiction over this chapter 11 case pursuant to 28 U.S.C. § 1334(a) and over this Motion pursuant to 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a) and Rule 83.6 of the District Court's Local Rules, the District Court has authority to refer and has referred this chapter 11 case to this Court.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has constitutional authority to enter judgment in this proceeding.

3. Venue in this chapter 11 case is proper in this district pursuant to 28 U.S.C. § 1408, and venue in this action is proper in this district pursuant to 28 U.S.C. § 1409.

4. The relief requested in this Motion is predicated upon Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Maine (the "Local Rules").

## BACKGROUND

**A. Pre-Petition Background And The Agreement With NDIC**

1. Headquartered in Saco, Maine, SWF is one of the largest frozen food distributors in the Northeastern United States. Originally founded in 1979 to deliver ice cream in northern Maine, SWF has grown into a leading distributor of frozen food, ice cream, and novelties.

2. As part of its distribution business, SWF and NDIC entered into the 2014 Agreement. A true and correct copy of the 2014 Agreement is attached hereto as **Exhibit A**.[1]

3. 

---

[1] The 2014 Agreement was ▓▓▓ through that certain Distribution Agreement by and between NDIC and SWF effective January 1, 2019, as amended by that First Amendment effective January 1, 2019 (the "2019 Agreement"). A true and correct copy of the 2019 Agreement is attached hereto as **Exhibit B**. Unless otherwise stated, the 2014 Agreement and 2019 Agreement are referred to collectively as the "Agreement" herein. For purposes of this Motion, ▓▓▓

4. ███████████████████████████████████████████████

███████████████████████████████████████ See Ex. A,

2014 Agreement at ¶ 3.

5. ███████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Ex. A, 2014 Agreement at ¶ 21.7. ███████████████

███████

6. █████████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

Ex. A, 2014 Agreement at ¶ 1.

**B.** ████████████████████████████████████

7. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8. Upon information and belief, ████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9. Upon information and belief, ████████████████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



C. **SWF's Bankruptcy And Potential Claims Against NDIC And Others**

10. On May 6, 2019 (the "Petition Date"), SWF filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code. The Debtor continues to operate as a debtor in possession. No committee or trustee has been appointed in the Debtor's bankruptcy case.

11.

12. The Debtor believes that the foregoing facts, and other facts that may be discovered through the Examination, may give rise to certain causes of action by the Debtor's estate against NDIC and other entities for conduct that occurred both before and after the Petition Date.

13. Additional information regarding SWF, the relationship with NDIC, and the Debtor's bankruptcy case may be found in the Declaration of Keith Benoit in Support of Chapter 11 Petition and Various First Day Motions, which is incorporated herein by reference.

**RELIEF REQUESTED**

14. By this Motion, the Debtor requests that this Court enter an order compelling NDIC to appear, through a qualified representative, for the Examination regarding the topics identified in **Appendix A** attached hereto, at the offices of Bernstein, Shur, Sawyer & Nelson, P.A., 100 Middle Street, Portland, Maine, at 9:00 a.m. (EST) on May 15, 2019, or on such other date or place as the parties may determine by agreement. The Debtor also seeks an order compelling the production of the documents in NDIC's possession, custody, or control that are identified in **Appendix A**, such that the Debtor may examine those documents and use them at the Examination.

**BASES FOR RELIEF**

15. Rule 2004 provides that, on motion of any party in interest, the Court may order the examination of *any* entity with respect to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate...." Fed R. Bankr. P. 2004(a) and (b). "The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial." Fed. R. Bankr. P. 2004(c).

16. The primary purpose of a Rule 2004 examination is to permit the estate's fiduciaries and stakeholders to unearth assets. As an early decision noted in an often repeated characterization, the "purpose of a Rule 2004 examination is to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved." In re Coffee Cupboard, Inc., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing Cameron v. United States, 231 U.S. 710, 717 (1914) (discussing a predecessor to Rule 2004)). "[T]he purpose of a Rule 2004 exam is 'to assist a trustee in a

6

bankruptcy proceeding to learn quickly about the debtor entity so that he or she may maximize the realization of the debtor's estate and discover the existence and location of assets of the estate.'" In re Metiom, Inc., 318 B.R. 263, 270 n.6 (S.D.N.Y. 2004) (citing, inter alia, In re Dinubilo, 177 B.R. 932, 940 (E.D. Cal. 1993)). In addition, Rule 2004 enables a party in interest to

> obtain information about the debtor's financial condition, matters that may affect the administration of the debtor's estate, right to a discharge, or operation of a business and the desirability of its continuance, sources of, and consideration for, money or property to consummate a plan, and other matters relevant to the case or formulation of a plan.

In re Daisytek, Inc., 323 B.R. 180, 187 (N.D. Tex. 2005). Thus, Rule 2004 is extremely broad in scope; in what is now a well-worn description, a Rule 2004 examination has been likened to a lawful "fishing expedition." In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); In re Youk-See, 450 B.R. 312, 319 (Bankr. D. Mass. 2011) ("[T]he scope of a Rule 2004 examination is unfettered and broad.... The examination ... is of necessity to a considerable extent a fishing expedition.") (quotation and citation omitted).

17. The examination of (and seeking documents production from) "any entity" is explicitly permitted under Rule 2004 because third parties are likely to have most, if not all, of the relevant knowledge and facts. See In re Valley Forge Plaza Assoc., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990). "Discovery under Rule 2004 extends beyond the debtor to persons associated with him as well as to those persons who may have had business dealings with the debtor." In re CIS Corp., 123 B.R. 488, 490 (S.D.N.Y. 1991). Accordingly, among other purposes, Rule 2004 is designed for use as a pre-litigation discovery device, useful for both discovering potential estate causes of action and supporting facts in the first instance, as well as to determine the odds of a successful prosecution of the claim. As the court stated in Bennett

Funding Group: "[Rule 2004] is properly used as a pre-litigation device to determine whether there are grounds to bring an action...", and the rule is a "broad discovery tool." Bennett Funding Group., 203 B.R. at 28; see also In re Whitley, No. 10-10426C-7G, 2011 WL 6202895, at *2 (Bankr. M.D.N.C. Dec. 13, 2011) ("A trustee may use Rule 2004 as a pre-discovery device to unearth claims and causes of action for the estate and reveal the breadth and nature of the estate."); In re Washington Mutual, Inc., 408 B.R. 45, 53 (Bankr. D. Del. 2009) ("[o]ne of the primary purposes of a Rule 2004 examination is as a pre-litigation device"). Thus, as the court in Mirant Corporation emphasized, the Rule's utility is in ensuring that "no viable cause of action is lost" and that "all possible claims ... have been identified." Mirant Corp., 326 B.R. at 357.

18.     Here, good cause exists under the circumstances for the Court to authorize the Debtor to conduct the Examination of NDIC as requested herein, including the production of documents set forth in **Appendix A**.  NDIC's conduct, moreover, may have continued after the Petition Date, which could provide additional claims for the estate, including for willful violation of the automatic stay imposed by 11 U.S.C. § 362(a) through ▮ ▮ Through the Examination, the Debtor seeks to

8

determine whether █████████████████████████████████████████

The Debtor also seeks to understand whether any other party has cooperated or conspired with NDIC in regard to causing harm to SWF or the estate. The production of documents, moreover, is critical to the exploration of these and other issues, as documents are necessary to evidence, clarify, prove, or explain such issues to the ultimate benefit of the estate.

19. In sum, ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Thus, fundamentally, the Debtor seeks to determine if the Debtor's estate has any causes of action against NDIC or any other entity. Accordingly, in light of the possibility that it will allow the Debtor to determine if the Debtor's estate possesses claims against NDIC or other entities, the proposed examination of NDIC falls squarely within the parameters of Rule 2004.

20. Pursuant to Local Rules 2004-1(a) and 9013-1(b), counsel for the Debtor contacted counsel for NDIC prior to this filing regarding the scheduling of the Examination. Counsel for the Debtor is awaiting a response, and he will continue to attempt to work with NDIC in good faith regarding the date and time of the Examination.

## **CONCLUSION**

WHEREFORE, the Debtor requests that this Court enter an order pursuant to Fed. R. Bank. P. 2004 commanding NDIC to appear for an examination at the offices of Bernstein Shur at 9:00 a.m. (EST) on May 15, 2019, or on such other date as the parties may determine by agreement. In addition, the Debtor requests authority to seek to compel production of the documents requested in **Appendix A** pursuant to Fed. R. Bankr. P. 2004(c).

Dated: May 7, 2019            **SURE WINNER FOODS**

By its proposed counsel:

*/s/ Robert J. Keach*
Robert J. Keach, Esq.
Adam R. Prescott, Esq.
BERNSTEIN, SHUR, SAWYER & NELSON, P.A.
100 Middle Street, P.O. Box 9729
Portland, ME 04104-5029
Tel: (207) 774-1200
Fax: (207) 774-1127

# APPENDIX A

## Definitions

In construing these Document Requests, the following definitions shall apply:

A.  "2014 Agreement" shall mean that certain Distribution Agreement entered into between SWF and NDIC effective September 7, 2014, as amended by that certain First Amendment effective September 7, 2014.

B.  "2019 Agreement" shall mean that certain Distribution Agreement entered into between SWF and NDIC effective January 1, 2019, as amended by that First Amendment effective January 1, 2019.

C.  [REDACTED]

D.  "Agreement" shall mean the 2014 Agreement together with the 2019 Agreement.

E.  "Communication" shall mean any transmission of words or ideas between or among two or more persons, including, but not limited to, spoken words, conversations, conferences, discussions, interviews, reports, meetings, negotiations, agreements and understandings, whether transmitted in person or by an electronic device such as telephones or radio, facsimile transmission or e-mail, and documents, as defined herein.

F.  "Debtor" shall mean Sure Winner Foods, including its former and present predecessors, subsidiaries, affiliates, divisions, directors, officers, employees, agents and representatives, and all those who act or have acted on its behalf.

G.  [REDACTED]

1

██████████████████████████████████

H.      "Document" shall have the broadest meaning possible under the Federal Rules of Civil Procedure, made applicable by the Federal Rules of Bankruptcy Procedure, including, but not limited to, all originals, non-identical copies, amendments, restatements, and drafts of any written, printed, handwritten, recorded, or graphic matter of any kind, however produced or reproduced, and regardless of where located, including, but not limited to, any work paper, correspondence, memorandum, note, research, checklist, opinion, minutes, electronic mail, report, chart, graph, summary, index, diary, desk or pocket calendar, notebook, any magnetic or other recording tape, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), photograph, microfiche, microfilm, videotape, record, or motion picture, and electronic, mechanical, or electrical record or representation of any kind, including but not limited to tape, cassette, disc, magnetic card, or recording. "Document" shall include metadata and/or other identifying information for those documents stored electronically, including electronic mail. "Document" shall also include the file folders in which said documents are maintained and any table of contents or index thereto; and copies of documents of which the originals have been destroyed pursuant to a document destruction policy or otherwise.

I.      ██████████████████████████████████

J.      "NDIC" shall mean Nestle Dreyer's Ice Cream Company, including any predecessors, subsidiaries, affiliates, divisions, directors, officers, employees, agents and representatives, and all those who act or have acted on any or all such entities' behalf.

2

K. "Petition Date" shall mean May 6, 2019.

L. "Relate to" or "relating to" or any variation thereof shall mean in any way directly or indirectly, in whole or in part, relating to, regarding, constituting, concerning, about, pertaining to, reflecting, considering, underlying, modifying, amending, confirming, mentioning, endorsing, evidencing, summarizing, memorializing, describing, discussing, analyzing, evaluating, representing, supporting, qualifying, terminating, revoking, canceling, or negating the matter described in the Document Request.

M. "Territory" shall have the meanings ascribed to such term in the Agreement.

### Instructions

In responding to and interpreting these Document Requests, the following instructions shall apply:

A. If any Document Request, read literally, requires the production of a part or portion of a document, production of the entire document is requested.

B. Each Document Request contemplates the production of a document (along with all drafts thereof) in its entirety, without abbreviation or expurgation.

C. With respect to electronically stored information ("ESI"):

  a. All electronic mail and spreadsheets responsive to these Document Requests that are maintained in the usual course of business in electronic format shall be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

  b. All other documents responsive to these Document Requests that are maintained in the usual course of business in electronic format shall be produced as searchable single-page TIFF Group IV 300 dpi images and single-page text files (the filename of the TIFF and text files should be the Bates/PageID) with a Summation DII load file which establishes appropriate document breaks and maintains parent/child relationships. A Summation DII load file is a text file that is used to load images and text into Summation establishing appropriate document breaks.

  c. All documents responsive to these Document Requests shall be produced with the metadata normally contained within such documents, and the necessary Summation load files. If such metadata is not available, each document shall be accompanied by a listing of all file properties concerning such document, including, but not limited to, all information concerning the date(s) the document was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the document.

  d. Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use ESI. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with the Debtor. If you decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost you claim is associated with the search or production of such ESI.

D. If any specific Document Request cannot be complied with in full, it shall be complied with to the extent possible, and an explanation shall be given why full compliance is not possible.

E. If you contend that any document responsive to a Document Request is privileged from disclosure or production, identify each document as to which privilege is claimed as follows:

  i. Date of the document;

  ii. Author(s) of the document;

  iii. Recipient(s) of the document, including those receiving copies via cc;

  iv. Type of document;

  v. Subject matter of the document; and

  vi. The nature of the privilege claimed.

F. As to any document which no longer exists but which you are aware existed at

one time, please identify the document with as much particularity as possible, including:

    i. The author(s), editor(s), reviewer(s) and addressee(s);

    ii. The addressee(s) of any indicated or blind copies;

    iii. The date, subject matter and number of pages;

    iv. A description of any attachment(s) or appendice(s) to the document;

    v. All persons to whom the document was distributed, shown or explained;

    vi. The date of destruction or discard, manner of destruction or discard and reason for destruction or discard of the document; and

    vii. The person(s) authorizing or carrying out such destruction or discard.

As to any data which no longer exists but which you are aware existed at one time, please identify the data with as much particularity as possible, including:

    i. The author(s), editor(s) and reviewer(s);

    ii. The recipient(s) and all other persons given access to the data by email or by other electronic form;

    iii. The system components, machines or other locations upon which such recipients or other persons accessed the data;

    iv. Any email servers used to send or receive the data;

    v. The creation date and subject matter;

    vi. The date of destruction or discard, manner of destruction or discard and reason for destruction or discard of the data; and

    vii. The person(s) authorizing and carrying out such destruction or discard.

G. If a portion of an otherwise responsive document or data set contains information subject to a claim of privilege, those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced along with a privilege log entry.

H. These Document Requests shall be deemed continuing. NDIC shall promptly provide additional responsive documents/data it may locate after it provides a formal response.

I. Please provide a written response to these Document Requests in addition to providing responsive documents. Please set forth the particular Document Request in full before each response.

J. Each paragraph or subparagraph of this Document Request should be construed independently and without reference to any other paragraph or subparagraph for the purpose of litigation.

K. "And" and "or" shall be construed conjunctively or disjunctively as necessary to make the Document Request inclusive rather than exclusive.

L. "Any" includes "all" and "all" includes "any."

M. The single includes the plural, and vice versa.

N. All words used in the present tense shall be read to include the past tense and vice versa.

## Document Requests

1. All Documents that evidence, refer, or relate to NDIC's decision and analysis regarding, and the negotiation, execution, or delivery of, the 2019 Agreement.

2. All Communications between NDIC and ████████████████████████████████████████████████████████████████

3. All Documents that evidence, refer, or relate to ████████████████████████████████████

4. All Communications, whether internal to NDIC or external, regarding SWF, whether referred to in the past, present, or future, including, but not limited to, ███████████████████████████████████████████

5. All Documents, including drafts and Communications, that evidence, refer, or relate to any presentations, slides, or decks analyzing, discussing, or evaluating ███████████████

6. All Communications with ███████████████████████████████████████████

7. All Communications with ███████████████████████████████████████████

8. All Documents that evidence, refer, or relate to the financial effect on SWF ███████████████

9. All Documents regarding ███████████████

10. All Communications regarding ███████████████

11. All Documents that evidence, refer, or relate to the financial effect on NDIC ███████████████

12. All Documents that evidence, refer, or relate to the financial effect on NDIC ███████████████

13. All Documents that evidence, refer, or relate to the financial effect on NDIC ███████████████

7

14. All Communications, whether internal to NDIC or external, ███████████████████████████████████████

15. All documents that evidence, refer, or relate to SWF's ███████████████████████████████████████

16. All Documents that evidence, refer, or relate to SWF's viability ███████████

17. All Communication between NDIC and ███████████████████████████████████████

18. All Communications after the Petition Date regarding ███████████████

### Rule 2004 Examination Topics

1. Any and all Documents or Communications produced by NDIC in response to the Document Requests.

2. The 2019 Agreement.

3. NDIC's Communications relating to ███████████████

4. NDIC's consideration, analysis, forecasting, projections, or strategy regarding ███████████

5. NDIC's Communications regarding SWF, whether referred to in the past, present, or future, including, but not limited to, █████████████████████████████
████████████████████████

6. NDIC's presentations, slides, or decks analyzing, discussing, or evaluating █
████████████████████████

7. The financial effect on SWF from ████████████████████████████████

8. The ████████████████████████████████████████████

9. The financial effect on NDIC ████████████████████████████████████████

10. The financial effect on NDIC ████████████████████████████████████████

11. The financial effect on NDIC ████████████████████████████████████████

12. NDIC's Communications ████████████████████████████████████████
████████████████████████

13. SWF's ████████████████████████████████████████████████
████████████████████████████████

14. SWF's viability ████████████████████████████████████

15. NDIC's conduct after the Petition Date regarding ████████████████
████████████████████████

9